# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOSE MENDOZA, JR., et al.,<br><br>Plaintiff(s),<br><br>v.<br><br>AMALGAMATED TRANSIT UNION INTERNATIONAL, et al.,<br><br>Defendant(s). | Case No. 2:18-CV-959 JCM (NJK)<br><br>ORDER |

Presently before the court are three separate motions to dismiss filed by defendants Miller Kaplan Arase, LLP, Anne Salvador, and Alexandra Chernyak ("MKA defendants") (ECF No. 31); Amalgamated Transit Union International, James Lindsay III, Lawrence J. Hanley, Antonette Bryant, Richie Murphy, Keira McNett, Daniel Smith, and Tyler Home ("ATU defendants") (ECF No. 33); and Keolis Transit America, Inc. and Kelvin Manzanares ("KTA defendants") (ECF No. 51). Plaintiffs filed a response to each motion to dismiss (ECF Nos. 43, 44, 56), to which the MKA, ATU, and KTA defendants replied (ECF Nos. 53, 54, 59).

Also before the court is the ATU defendants' motion for leave to file excess pages. (ECF No. 28).

Oral argument has been requested, but it is not necessary in order for the court to resolve these motions.

**I.  Background**

This action arises from the investigation into, and subsequent imposition of trusteeship over, Amalgamated Transit Union Local 1637 ("Local 1637"). The complaint contains the following allegations:

**James C. Mahan**
**U.S. District Judge**

Plaintiff Jose Mendoza was the president of Local 1637, which is a local union that is affiliated with Amalgamated Transit Union International ("ATU International"). (ECF No. 8). The remaining plaintiffs in this action consist of Robbie Harris, Robert Naylor, Myeko Easley, Dennis Hennessey, Gary Sanders, Linda Johnson-Sanders, and Ceasar Jimenez. *Id*. These plaintiffs held various positions on the former Local 1637 executive board. *Id*.

Between 2010 and 2016, Mendoza had multiple disputes with ATU International, many of which revolved around the appropriate way to read Local 1637's bylaws. *Id*. Two primary disagreements between Mendoza and ATU International concerned the appropriate rate of pay for the president of Local 1637 and whether the president could designate the secretary-treasurer position as less than full-time. *Id*.

In August 2016, Local 1637 entered into an agreement with Miller Kaplan Arase, LLP ("Miller Kaplan Arase"), a certified public accounting firm, to conduct an audit of Local 1637. *Id*. The individual auditors, Chernyak and Salvador, engaged in communications with plaintiffs Home and Lindsay (without informing Local 1637) to produce the audit report. *Id*. The audit report was used by the ATU defendants to support ATU's own audit, discussed below. *Id*.

On March 10, 2017, Home, an internal auditor, and Lindsay, international vice president of ATU International, produced an internal audit report of Local 1637. *Id*. The report found that Mendoza was overpaid and had committed financial malfeasance. *Id*. On April 10, 2017, Hanley, the international president of ATU International, removed plaintiffs from their positions by imposing a trusteeship over Local 1637. *Id*. On June 24, 2017, the ATU International general executive board ratified the trusteeship. *Id*.

Mendoza had been previously employed as a coach operator before assuming full-time employment as president of Local 1637. *Id*. After imposition of the trusteeship, Mendoza was directed to present for work as a coach operator with Keolis Transit America, Inc. ("Keolis Transit"), a company with which Local 1637 had previously contracted. *Id*. At this time, Mendoza did not have an active commercial driver's license ("CDL"), a requirement for this type of work, and was thus unable to commence employment. *Id*. Five days after the trusteeship

was ratified, Keolis Transit terminated Mendoza "for job abandonment." *Id*. Mendoza filed a grievance with Local 1637, which was forwarded to Keolis Transit. *Id*.

ATU International and Keolis Transit ultimately negotiated a settlement on Mendoza's behalf that allowed for his reinstatement with Keolis Transit provided that he recertify his CDL "within five (5) business days of the ATU's receipt of this notice." *Id*. Mendoza did not accept the settlement. *Id*. At the grievance hearing that followed, defendant Lindsay accepted the settlement on Mendoza's behalf and without Mendoza's consent. *Id*. Mendoza's termination was finalized after he did not recertify his CDL within the time limit set by the settlement. *Id*.

On September 22, 2017, Mendoza initiated the first iteration of this action in state court, which was removed to federal court on September 25, 2017. *See Mendoza, Jr. v. Amalgamated Transit Union International, et al.*, case no. 2:17-cv-2485-JCM-CWH, ECF No. 1 ("*Mendoza I*"). In *Mendoza I*, Mendoza's complaint set forth ten separate causes of action on behalf of himself as an individual, and on behalf of Local 1637, against the ATU defendants (excluding Murphy): (1) breach of contract regarding defendants' alleged amending of Article 4 of the Local 1637 Constitution and failure to follow procedure in charging Mendoza; (2) breach of contract regarding defendants' alleged fraudulent contravention of the ATU International Constitution and Bylaws in implementing the trusteeship; (3) breach of implied covenant of good faith and fair dealing; (4) fraudulent misrepresentation; (5) negligent misrepresentation; (6) legal malpractice as to defendants Keira McNett and Daniel Smith; (7) breach of fiduciary duty; (8) constructive fraud; (9) malicious prosecution; and (10) civil conspiracy. *Id*.

On May 25, 2018, plaintiffs filed the present action. (ECF No. 1). Plaintiffs initially named as defendants ATU International, Lindsay, Hanley, Bryant, Murphy, McNett, Smith, and Home. *Id*. On July 13, 2018, plaintiffs filed an amended complaint, adding thirteen (13) new causes of action and naming as defendants the MKA and KTA defendants. (ECF No. 8). Plaintiffs' amended complaint asserts twenty-seven (27) causes of action in total. *Id*. These claims are based on various federal and state statutes, including the Labor Management Relations Act ("LMRA"), the Labor-Management Reporting and Disclosure Act ("LMRDA"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), among others. *Id*.

Now, the MKA defendants move to dismiss the ninth, tenth, thirteenth, nineteenth, twenty-third, twenty-fourth, and twenty-fifth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 31). The ATU defendants move to dismiss all but the twenty-fifth cause of action pursuant to the same. (ECF No. 33). The KTA defendants move to dismiss the sixth, eighth, ninth, and tenth causes of action pursuant to the same. (ECF No. 51).

**II.     Legal Standard**

   *a.  Motion to dismiss*

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 678-79. Mere recital of the elements of a cause of action, supported only by conclusory statements, does not suffice. *Id*.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-Iqbal pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### b. FRCP 9(b) – claims alleging fraud

Allegations of fraud are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud . . . ."). Rule 9(b) operates "to give defendants notice of the particular misconduct which is alleged," requiring plaintiffs to identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (citations omitted).

"The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Id.* (citations omitted). Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

### III. Discussion

Plaintiffs' amended complaint sets forth twenty-seven causes of action: (1) breach of ATU International's constitution and general laws in violation of LMRDA safeguards against improper disciplinary action; (2) violation of LMRDA equal rights (pursuant to LMRDA Title I § 101, 29 U.S.C. § 411 and 412); (3) violation of LMRDA free speech; (4) breach of ATU

- 5 -

International's constitution and general laws in violation of LMRDA trusteeship provisions; (5) violation of LMRDA indirect election provisions; (6) breach of duty of fair representation; (7) violation of LMRDA equal rights (pursuant to LMRDA Title I § 101 and 29 U.S.C. § 411(a)(1)); (8) violation of LMRDA prohibition on receiving and accepting something of value from a union employer; (9) wire fraud and mail fraud; (10) federal RICO violation (pursuant to 18 U.S.C. § 1962); (11) LMRA breach of contract; (12) negligence; (13) defamation and defamation *per se*; (14) fraudulent misrepresentation; (15) legal malpractice; (16) breach of fiduciary duty; (17) constructive fraud; (18) malicious prosecution; (19) civil conspiracy; (20) false pretenses (pursuant to Nevada Revised Statutes § 205.380); (21) perjury; (22) offering false evidence; (23) false pretenses (pursuant to Nevada Revised Statutes § 205.377); (24) state RICO violation (pursuant to Nevada Revised Statutes § 207.470 *et seq*); (25) accounting malpractice and professional negligence as to the MKA defendants; (26) accounting malpractice and professional negligence as to defendant Tyler Home; and (27) breach of fiduciary duty.[1] (ECF No. 8).

*a. MKA defendants' motion to dismiss*

The MKA defendants argue in their motion to dismiss that plaintiffs' ninth, tenth, thirteenth, nineteenth, twenty-third, twenty-fourth, and twenty-fifth claims should be dismissed for failing to state a claim upon which relief can be granted. (ECF No. 31).

*1. Ninth cause of action as to MKA defendants*

Plaintiffs' ninth cause of action alleges that all defendants conspired to, and in fact did, use wire transmissions and mail services to defraud plaintiffs of their rights guaranteed by the LMRDA. (ECF No. 8). These statutes do not expressly confer a private right of action, and the weight of authority has concluded that no implied private right of action exists. *E.g.*, *Wisdom v.*

---

[1] Claims 1, 2, 3, 4, 5, 7, 11, 12, 14, 16, 17, 18, 20, 22, and 27 are brought by all plaintiffs against the ATU defendants. Claim 6 is brought by plaintiff Jose Mendoza against the ATU and KTA defendants. Claim 8 is brought by all plaintiffs against the ATU and KTA defendants. Claims 9, 10, 13, and 19 are brought by all plaintiffs against all defendants. Claim 15 is brought by all plaintiffs against defendants McNett and Smith. Claim 21 is brought by all plaintiffs against defendants Hanley, Lindsay, and Home. Claims 23 and 24 are brought by all plaintiffs against the MKA and ATU defendants. Claim 25 is brought by all plaintiffs against the MKA defendants. Claim 26 is brought by all plaintiffs against defendant Home.

*First Midwest Bank of Popular Bluff*, 167 F.3d 402, 407–08 (8th Cir. 1999) (no implied private right of action under mail fraud or wire fraud statutes); *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1178 (6th Cir. 1979) (no implied private right of action under mail fraud statute); *Napper v. Anderson, Henley, Shields, Bradford and Pritchard*, 500 F.2d 634, 636 (5th Cir. 1974) (no implied private right of action under wire fraud statute), cert. denied, 423 U.S. 837 (1975).

Accordingly, plaintiffs' ninth claim is dismissed with prejudice.

*2. Tenth cause of action as to MKA defendants*

Plaintiffs' tenth cause of action alleges a RICO violation pursuant to 18 U.S.C. § 1962. (ECF No. 8). Specifically, plaintiffs allege that the criminal offenses pleaded in the eighth and ninth causes of action serve as predicate offenses under the RICO statute. *Id*. The MKA defendants' motion to dismiss asserts that plaintiffs have not sufficiently established that the MKA defendants participated in the management of a RICO enterprise or engaged in a pattern of racketeering activity. (ECF No. 31). Further, the MKA defendants argue that plaintiffs lack standing to assert a RICO claim. *Id*.

To survive a motion to dismiss, a federal RICO civil complaint must plausibly allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c)). Under the *Reves v. Ernst & Young* "operation or management" test, to participate in the "conduct" of an enterprise, one must participate in the operation or management of the enterprise itself. 507 U.S. 170, 185 (1993). RICO liability is not limited to those with primary responsibility for the enterprise's affairs, and it is not limited to those with a formal position in the enterprise; one need only play "some part" in directing the enterprise's affairs for liability to attach. *Id*. at 179.

Plaintiffs' only allegation of RICO conduct by the MKA defendants concerns the reliance of the ATU defendants on the Miller Kaplan Arase audit report. (*See* ECF No. 8). The mere preparation of an audit report and the nondescript alleged reliance of the ATU defendants upon that report is insufficient to plausibly state that the MKA defendants played at least "some part" in directing the alleged enterprise. *See Reves*, 507 U.S. at 179; *see also Univ. Of Md. at Balt., et*

*al. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result. There must be a nexus between the person and the conduct in the affairs of an enterprise. The operation or management test goes to that nexus."). Moreover, plaintiffs' allegation that the audit report was defective due to professional misconduct has no bearing on the operation or management test. *Cf. Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (holding that whether the professional services at issue were rendered "well or poorly, properly or improperly, is irrelevant to the *Reves* test").

Accordingly, the court will dismiss the plaintiffs' tenth claim without prejudice as to the MKA defendants.

### 3. *Thirteenth cause of action as to MKA defendants*

Plaintiffs' thirteenth cause of action alleges defamation and defamation *per se*. (ECF No. 8). To pursue an action for defamation, plaintiffs must plausibly allege: "(1) a false and defamatory statement ...; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Clark County School Dist. v. Virtual Educ, Software, Inc.*, 125 Nev. 374, 385 (Nev. 2009). If a defamatory communication pertains to a "'person's lack of fitness for trade, business, or profession,'" or tends to injure the plaintiff in his or her business," it is defamation *per se* and damages are presumed. *Id*. (citing *K–Mart Corporation v. Washington*, 109 Nev. 1180, 1192 (Nev. 1993).

Plaintiffs' defamation claim appears to rely solely on the allegation that "Defendants made a false a [sic] defamatory statements [sic] alleging that Plaintiffs committed a criminal offense of embezzlement of $144,909.08 in Local 1637 dues money." (ECF No. 8). Plaintiffs provide no additional support for this allegation, and at no point in the complaint do plaintiffs allege that the MKA defendants published to a third person the allegedly defamatory statement. Because the mere recital of the elements of a defamation claim, absent any factual support, is insufficient to "state a claim to relief that is plausible on its face," plaintiffs' thirteenth cause of action is insufficiently pleaded. *See Iqbal*, 556 U.S. at 678 (citation omitted).

Therefore, the court will dismiss without prejudice the thirteenth claim as it pertains to the MKA defendants.

### 4. *Nineteenth cause of action as to MKA defendants*

Plaintiffs' nineteenth cause of action alleges civil conspiracy. (ECF No. 8). This claim is nearly identical to the tenth cause of action pleaded in *Mendoza I*. *See Mendoza, Jr. v. Amalgamated Transit Union International, et al.*, case no. 2:17-cv-2485-JCM-CWH, ECF No. 1.

Where a plaintiff brings a contract claim under Section 301 of the LMRA, any state-law tort claims that are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract . . . must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).

Indeed, where a plaintiff's contract and tort claims stem from the same facts, the duties and rights at issue in a state-law tort claim "derive from the rights and obligations established by the contract." *Id*. at 216–217. Thus, a contract claim brought under Section 301 of the LMRA precludes the need for duplicative state-law tort claims.

In *Mendoza I*, this court held that Mendoza's state-law tort claims "relate to the process by which [ATU] International imposed a trusteeship over Local 1637 and removed Mendoza from his position as president of Local 1637." *Mendoza I*, case no. 2:17-cv-2485-JCM-CWH, ECF No. 30. This court also held that resolution of Mendoza's state-law tort claims is "substantially dependent upon analysis of the terms of [the relevant] labor contract[s]." *Id*. On this basis, the court dismissed Mendoza's civil conspiracy claim as preempted by Section 301(a) of the LMRA. *Id*.

Here, plaintiffs have, in their eleventh cause of action, alleged a general breach of contract claim under Section 301 of the LMRA. (ECF No. 8). Plaintiffs' civil conspiracy claim is derived from the same facts that underlie their Section 301 contract claim, and it is essentially the same claim as the civil conspiracy claim brought in *Mendoza I*. Plaintiffs' nineteenth cause of action is therefore preempted by Section 301(a) of the LMRA.

Accordingly, the court will dismiss without prejudice plaintiffs' nineteenth claim against the MKA defendants.

    *5. Twenty-third cause of action as to MKA defendants*

Plaintiffs' twenty-third cause of action alleges, as a Nevada state law RICO predicate offense, the crime of obtaining something of value by false pretenses pursuant to Nevada Revised Statutes § 205.377. (ECF No. 8). Section 205.377 provides that:

> A person shall not, in the course of an enterprise or occupation, knowingly and with the intent to defraud, engage in an act, practice or course of business or employ a device, scheme or artifice which operates or would operate as a fraud or deceit upon a person by means of a false representation or omission of a material fact that:
>
> (a) The person knows to be false or omitted;
> (b) The person intends another to rely on; and
> (c) *Results in a loss to any person who relied on the false representation or omission*,
>
> in at least two transactions that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents within 4 years and in which the aggregate loss or intended loss is more than $650.

Nev. Rev. Stat. § 205.377 (emphasis added).

In accepting as true all well-pled factual allegations in the complaint, plaintiffs have failed to plausibly allege an § 205.377 violation. The statute requires not only that the fraud or deceit result in a loss, but also that the loss be attributable to a person who *relied* on the false representation or omission. *See id*. Here, plaintiffs have provided no factual support plausibly evincing that any plaintiff relied on MKA's allegedly false representations to their detriment. Rather, plaintiffs have shown only that the ATU International general executive board and the U.S. Department of Labor relied on the allegedly false representations in the audit.

Because plaintiffs have failed to plausibly allege a necessary element of a Nevada Revised Statutes § 205.377 violation, the court will dismiss without prejudice plaintiffs' twenty-third claim against the MKA defendants.

    *6. Twenty-fourth cause of action as to MKA defendants*

Plaintiffs' twenty-fourth cause of action alleges a violation of Nevada's RICO act pursuant to Nevada Revised Statutes § 207.470 *et seq*.

To survive a motion to dismiss, a civil complaint under Nevada's RICO act must plausibly allege three elements: "(1) the plaintiff's injury must flow from the defendant's violation of a predicate Nevada RICO act; (2) the injury must be proximately caused by the defendant's violation of the predicate act; and (3) the plaintiff must not have participated in the commission of the predicate act." *Allum v. Valley Bank of Nevada*, 109 Nev. 280, 283 (Nev. 1993).

Of the Nevada RICO predicate acts identified in the twenty-fourth cause of action, only one—obtaining property under false pretenses pursuant to Nevada Revised Statutes § 205.377—pertains to alleged conduct by the MKA defendants. For the reasons discussed in the analysis of plaintiffs' twenty-third cause of action above, plaintiffs have failed to plausibly allege a § 205.377 violation, and therefore have failed to plausibly allege a violation of a Nevada RICO predicate act. As such, plaintiffs have not stated a plausible claim for relief under the Nevada RICO act.

Accordingly, the court will dismiss without prejudice plaintiffs' twenty-fourth claim against the MKA defendants.

### 7. *Twenty-fifth cause of action as to MKA defendants*

The twenty-fifth cause of action alleges accounting malpractice and professional negligence. (ECF No. 8). The MKA defendants argue in their motion to dismiss that plaintiffs' lack standing to bring this claim, and that even if they have standing, they have failed to plausibly allege the elements of a professional negligence claim. (ECF No. 31).

Plaintiffs have made no showing of why they, as individual union members, have standing to bring an accounting malpractice and professional negligence claim. Plaintiffs have alleged that "Local 1637 entered into the agreement with [Miller Kaplan Arase] to conduct an independent audit of Local 1637," which supports standing only for Local 1637 itself. (*See* ECF No. 8). Although plaintiffs assert that they are bringing this claim on behalf of the Local 1637 executive board and general membership, plaintiffs have acknowledged that they were removed from office and are no longer members of the executive board. *See id*.

Further, plaintiffs have not alleged that any demand was made on the Local 1637 executive board, or that they have any other source of authority to bring this claim. Because plaintiffs have not established standing to bring this claim, plaintiffs have failed to plausibly state an accounting malpractice and professional negligence claim upon which relief can be granted.

Thus, the court will dismiss without prejudice plaintiffs' twenty-fifth claim against the MKA defendants.

*b. ATU defendants' motion to dismiss*

The ATU defendants first contend that all of plaintiffs' claims against them should be dismissed because they represent impermissible claim splitting. (ECF No. 33). The ATU defendants assert in the alternative that none of plaintiffs' causes of action plausibly state a claim upon which relief can be granted. *Id*.

The claim splitting doctrine bars a party from subsequent, duplicative litigation where the "same controversy" exists. *See, e.g., Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F.Supp.2d 1052, 1057 (S.D. Cal. 2007) (quoting *Nakash v. Superior Court*, 196 Cal.App.3d 59 (Cal. Ct. App. 1987)). To determine whether a suit is duplicative, courts in the Ninth Circuit borrow from the test for claim preclusion. *Adams v. Cal. Dep't of Health Servs.,* 487 F.3d 684, 689 (9th Cir. 2007), overruled on other grounds by *Taylor v. Sturgell*, 553 U.S. 880, 904 (2008). But claim splitting, unlike res judicata, does not require a final judgment on the merits in the prior case. *Single Chip Sys. Corp.*, 495 F.Supp.2d at 1058.

A district court may exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions. *See Adams*, 487 F.3d at 688; *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000); *Russ v. Standard Ins. Co.*, 120 F.3d 988, 990 (9th Cir. 1997). In determining whether a later-filed action is duplicative, a court must examine "whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams*, 487 F.3d at 688.

. . .

. . .

*1. Same causes of action and relief sought*

To determine whether successive causes of action are the same, the court must apply the transaction test: "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Id*. at 689 (quoting *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 870 (9th Cir. 1992)). The transaction test requires the court to evaluate four criteria:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982). The "same transactional nucleus of facts" factor is commonly held to be outcome determinative. *Cf. Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 988 (9th Cir. 2005).

With regard to all plaintiffs, the transaction test factors weigh in favor of finding that *Mendoza I* and *Mendoza II* are the same causes of action with the same relief sought.

First, the court holds that the present action will impinge on, and consequently impair, rights or interests that would be established in *Mendoza I*. A finding on the breach of contract claim in *Mendoza I* would, for example, be impaired by a contrary finding as to plaintiffs' eleventh claim in the present action.

Second, substantially the same evidence to be presented in *Mendoza I* underlies all of the claims in the present action. Plaintiffs' claims are predicated on essentially the same evidence as the original ten (10) claims included in the *Mendoza I* complaint. The court holds that the evidence presented in this action is no different than that to be presented in *Mendoza I*.

Third, that the LMRA claims of the *Mendoza I* complaint and LMRDA claims of the present complaint establish different rights is not sufficient to differentiate the actions. *See Adams*, 487 F.3d at 691 (holding that separate federal statutes "establish[ing] distinct rights enforceable by litigants" are not alone sufficient to differentiate prior and later filed actions). Moreover, the same relief is sought in both suits: compensatory and punitive damages, declaratory relief, restoration of the Local 1637 board, and attorney's fees.

Fourth, *Mendoza I* and *Mendoza II* arise from the same transactional nucleus of facts. The allegations contained in the *Mendoza I* complaint all concern ATU International's investigation into, and subsequent imposition of trusteeship over, Local 1637. The present complaint concerns the exact same facts, with the only differences being the addition of Murphy and the MKA and KTA defendants, and the inclusion of additional claims, all of which are based on the same conduct alleged in *Mendoza I*.

Having considered the foregoing factors, the court finds that plaintiffs' suit is based on the same events as those set forth in *Mendoza I*. Therefore, under the claim splitting doctrine, these are the same causes of action with the same relief sought.

### 2. *Same parties or privies to the action*

The second determination in assessing whether a successive action is impermissibly duplicative is whether the parties or privies to the action are the same. "A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." *Taylor*, 553 U.S. at 892. In *Taylor*, the Supreme Court stated that "one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Id*. at 893 (quoting *Hansberry v. Lee*, 311 U.S. 32, 39 (1940)).

The *Taylor* Court enumerated six narrow exceptions to the rule that preclusion only applies to parties and parties by service. *Id*. One such exception in which nonparties qualify as parties for the purpose of a claim splitting analysis applies here.

The *Taylor* court held that "'in certain limited circumstances,' a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit." *Id*. at 894 (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996)). A party's representation of a nonparty is "adequate" for preclusion purposes only if: "(1) The interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Id*. at 900 (internal citations omitted). The Ninth Circuit

has also recognized that adequate representation may sometimes require "(3) notice of the original suit to the persons alleged to have been represented." *Id*.

With regard to Mendoza alone, he is a plaintiff in both *Mendoza I* and *Mendoza II*, and his claims are asserted against the same ATU defendants in both actions, except for Murphy, who is named only in *Mendoza II*. That neither Murphy, or for that matter the MKA or KTA defendants, were named as defendants in the initial action is of no consequence. *Cf. U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 249 (9th Cir. 1992) (holding that the naming of additional parties does not eliminate the preclusive effect of a prior judgment "so long as the judgment was rendered on the merits, the cause of action was the same and the party against whom the doctrine is asserted was a party to the former litigation"). Thus, both actions involve the same parties.

With regard to the remaining plaintiffs, Mendoza and the other plaintiffs' interests are aligned—all plaintiffs seek reinstatement to their positions on the Local 1637 board and damages for alleged state and federal law violations resulting from imposition of the ATU International trusteeship. (*See* ECF No. 8). Mendoza also understood himself to be acting in a representative capacity in *Mendoza I*. In the *Mendoza I* complaint, Mendoza requested "[t]hat this Court determine and declare that the trusteeship over Local 1637 be terminated, and that Mr. Mendoza *and the rest of Local 1637's Executive Board* be restored to their positions. *Mendoza I*, case no. 2:17-cv-2485-JCM-CWH, ECF No. 1 (emphasis added).

Further, the remaining plaintiffs (except Jimenez) appear to have had actual notice that Mendoza was representing their interests in *Mendoza I*, as they all attached declarations supporting Mendoza's motion for partial summary judgment. *Mendoza I*, case no. 2:17-cv-2485-JCM-CWH, ECF No. 68.19–68.25.

All of the remaining plaintiffs are thus subject to the preclusive effect of *Mendoza I* as adequately represented parties.

. . .

. . .

. . .

- 15 -

*3. Conclusion*

The court holds that the instant action is duplicative of the earlier-filed action, *Mendoza I*, and thus constitutes impermissible claim splitting. The court will therefore dismiss plaintiffs' amended complaint with prejudice as it pertains to the ATU defendants.

*c. ATU defendants' motion for leave to file excess pages*

The ATU defendants have also moved for leave to file excess pages, so as to file a thirty-six (36) page motion to dismiss plaintiffs' amended complaint. (ECF No. 28). Having now dismissed the ATU defendants pursuant to the foregoing, this motion is dismissed as moot.

*d. KTA defendants' motion to dismiss*

The KTA defendants first argue in their motion to dismiss that plaintiffs' sixth and eighth claims should be dismissed as time barred under the National Labor Relations Act ("NLRA") and as precluded under the LMRA. (ECF No. 51). Second, the KTA defendants contend that plaintiffs' sixth, eighth, ninth, and tenth claims fail to state a claim upon which relief can be granted. *Id*.

*1. Sixth cause of action as to KTA defendants*

As it pertains to the KTA defendants, the sixth cause of action's demand for damages, brought solely by Mendoza, may be properly brought only against Keolis Transit, as Manzanares, an individual union member, cannot be sued for damages under Section 301(a) of the LMRA. *See SEIU v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061 (9th Cir. 2010). Accordingly, the sixth cause of action is dismissed as to Manzanares.

However, Mendoza cannot maintain this claim against Keolis Transit either because it is barred by the applicable statute of limitations. A 12(b)(6) motion to dismiss may raise a statute of limitations defense where the statute's running is apparent on the complaint's face. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

The sixth cause of action alleges a hybrid fair representation/29 U.S.C. § 301 claim, which is subject to a six-month limitations period. *See Del Costello v. Teamsters*, 462 U.S. 151, 163–164 (1983) (holding that in an action against both a union for breach of its duty of fair representation and against an employer for breach of contract, the six-month statute of

limitations from the NLRA, section 10(b), applies); *Pencikowski v. Aerospace Corp.*, 340 F. App'x 416, 417–18 (9th Cir. 2009) (same). This hybrid claim is asserted against both a union (ATU International) and Mendoza's employer (Keolis Transit), so it must satisfy section 10(b).

The parties dispute the appropriate accrual date for Mendoza's hybrid fair representation/29 U.S.C. § 301 claim, but none of the potential options avoid the statute of limitations bar. This action was initiated on May 25, 2018, approximately eleven (11) months after Mendoza concedes that he had actual notice of termination of his employment with Keolis Transit, and approximately ten (10) months after Mendoza concedes he had actual notice of the alleged misconduct of the KTA defendants during the grievance process. (*See* ECF Nos. 1, 8). And in Mendoza's response to the KTA defendants' motion to dismiss, he concedes that he had actual notice of the denial to arbitrate his grievance on September 5, 2017, approximately nine (9) months before this action was filed. (ECF No. 56).

In taking the factual allegations contained in the complaint as true, the court concludes that Mendoza's sixth cause of action is time-barred under the applicable statute of limitations. Accordingly, the court will dismiss with prejudice the sixth cause of action as it pertains to the KTA defendants.

*2. Eighth cause of action as to KTA defendants*

The eighth cause of action's demand for damages, brought by all plaintiffs, is based upon an alleged violation of 29 U.S.C. §§ 186(a)(2) and 186(d)(1). (ECF No. 8). Monetary damages are unavailable under this section; only injunctive relief may be obtained. *Souza v. Trustees of W. Conference of Teamsters Pension Trust*, 663 F.2d 942, 945 (9th Cir. 1981) ("Nowhere is it shown that the section [29 U.S.C. §186] intended to provide anything more than injunctive relief."). Thus, the court will dismiss without prejudice plaintiffs' eighth cause of action.

*3. Ninth cause of action as to KTA defendants*

As is discussed above, no private right of action exists for claims alleged under 18 U.S.C. §§ 1341, 1343, or 1346. Thus, with regard to the KTA defendants, the ninth cause of action will be dismissed with prejudice.

. . .

**James C. Mahan**
**U.S. District Judge**

- 17 -

*4. Tenth cause of action as to KTA defendants*

Plaintiffs' tenth cause of action alleges a RICO violation pursuant to 18 U.S.C. § 1962. (ECF No. 8). The KTA defendants' motion to dismiss asserts that plaintiffs have failed to plead with sufficient specificity that they were injured by the allegedly improper racketeering activity. (ECF. No. 51).

As is stated above, to survive a motion to dismiss, a federal RICO civil complaint must plausibly allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Grimmett*, 75 F.3d at 510 (citing 18 U.S.C. §§ 1964(c), 1962(c)). Plaintiffs' complaint sets forth twenty-four pages of alleged facts common to all claims, as well as another four pages of allegations to support each element of their RICO claim against the KTA defendants. (ECF No. 8). In particular, plaintiffs allege that:

> ATU International Defendants sought and received assistance from Defendant Keolis to terminate Plaintiff Mendoza in order to use that termination as an affirmative defense to suit and maintain control over Local 1637, a thing of both monetary and political value to the ATU International Defendants. In return, the ATU International Defendants have granted concessions to Keolis in grievances, in bargaining, and in the interpretation of existing CBA provisions that have caused injury [sic] Local 1637 members through lost wages, and contractual benefits.

*Id*.

Plaintiffs also allege mail and wire fraud as RICO predicate acts (*id*.), which is permissible here. There is no requirement that a private action under § 1964(c) can proceed only where a defendant has been previously convicted of a predicate act. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 488 (1985). Moreover, a RICO predicate act need only involve conduct that is "indictable" under certain federal criminal statutes. *Id*. There is no requirement that the predicate act be enforceable through a private right of action, or that such a right actually be enforced. *See* 18 U.S.C. § 1961.

These facts and allegations, when read together, sufficiently indicate to the court and the parties the circumstances that give rise to each of the elements required for plaintiffs' tenth cause of action. And to the extent plaintiffs' RICO claim alleges fraudulent behavior by the KTA defendants in engaging in wire and mail fraud, plaintiffs have met their burden under Rule 9(b)

to allege facts regarding the persons, places, times, dates, and other details of the alleged fraudulent activity. *See Neubronner*, 6 F.3d at 671.

Accordingly, the court will deny the KTA defendants' motion to dismiss the tenth cause of action.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the MKA defendants' motion to dismiss (ECF No. 31) be, and the same hereby is, GRANTED.  With regard to the MKA defendants, plaintiffs' ninth cause of action is DISMISSED with prejudice, and plaintiffs' tenth, thirteenth, nineteenth, twenty-third, twenty-fourth, and twenty-fifth causes of action are DISMISSED without prejudice.

IT IS FURTHER ORDERED that the ATU defendants' motion to dismiss (ECF No. 33) be, and the same hereby is, GRANTED.  Plaintiffs' first through twenty-fourth, as well as twenty-sixth and twenty-seventh, causes of action against the ATU defendants are DISMISSED with prejudice.

IT IS FURTHER ORDERED that the ATU defendants' motion for leave to file excess pages (ECF No. 28) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that the KTA defendants' motion to dismiss (ECF No. 51) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.  With regard to the KTA defendants, plaintiffs' sixth and ninth causes of action are DISMISSED with prejudice, and plaintiffs' eighth cause of action is DISMISSED without prejudice.  Therefore, plaintiffs may proceed against the KTA defendants as to their tenth, thirteenth, and nineteenth causes of action.

DATED September 5, 2019.

_____
UNITED STATES DISTRICT JUDGE